UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL MACKIE, #94-A-7045,

                                Plaintiff,

-vs-

CORRECTIONS OFFICER SIPPEL, CORRECTIONS
OFFICER HALE, CORRECTIONS SERGEANT       11-CV-06146-CJS
DUNBAR, and OTHER UNIDENTIFIED
CORRECTIONS OFFICERS,                           DECISION and
                              Defendants.      ORDER
_____

INTRODUCTION

Michael Mackie, ("Plaintiff") a prison inmate in custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), is suing pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Constitutional rights while he was an inmate at Attica Correctional Facility. Now before the Court is Plaintiff's motion for leave to amend his complaint (Docket No. [#9]) and Defendants' cross-motion to dismiss [#13].[1] For the reasons that follow, Defendants' motion is granted in part, Plaintiff's application is denied, and this action is dismissed with prejudice.

BACKGROUND

On March 21, 2011, Plaintiff commenced this action by filing a Complaint (Docket No. [#1]), the factual allegations of which were sworn to under the penalties of perjury. The Complaint was against three DOCCS employees: Corrections Officer Sippel

---

[1] Defendants Hale and Dunbar previously filed a motion [#4] to dismiss the original complaint in this action, however, that motion is mooted by their subsequent motion to dismiss [#13].

1

("Sippel"), Corrections Officer Hale ("Hale") and Corrections Sergeant Dunbar ("Dunbar"). The Complaint's first claim alleged that on February 6, 2010, Plaintiff was attacked by another inmate, as a result of which he sustained multiple lacerations and a broken nose, and that Sippel and "other unidentified officers" "indifferently looked on and did absolutely nothing" while he was being assaulted. The second claim alleged that following the assault by the other inmate, Sippel and "other unidentified corrections officers" beat Plaintiff with wooden batons, causing further injuries to his head. The Complaint alleged that Plaintiff had filed inmate grievances concerning the incidents, which had been denied.

Those grievances, along with several other documents, were attached to the Complaint. The first such document is a misbehavior report, indicating that on February 6, 2010, Plaintiff fought with another inmate, Mr. Grey ("Grey"), who punched Plaintiff in the face, causing Plaintiff to fall backward and strike his head.

The next document is a Disciplinary Hearing Disposition, dated February 9, 2010, three days after the incident, indicating that Plaintiff was found guilty, at a Tier II disciplinary hearing, of the misbehavior charges, based in part on his plea of guilty. The disposition report further indicates that, at the disciplinary hearing, Plaintiff stated that he could not remember the incident involving Grey. More specifically, Plaintiff stated[2] that he would plead guilty to the charge since he had absolutely no recollection of the fight with Grey, due to the fact that he was knocked unconscious: "I, I, I was unconscious, I don't even know what happened, I don't even know, I, I guess [I'm]

---

[2] On March 21, 2012, Defendants filed a supplemental submission [#21], consisting of the transcript of Plaintiff's disciplinary hearing concerning the events of February 6, 2010.

guilty[.]" [sic] Plaintiff testified that he was knocked unconscious after he approached another inmate's cell while returning from "chow and rec." Plaintiff further testified regarding his inability to remember the incident, as follows:

> Inmate Mackie: Uh uh, I just like, have you ever seen one of them Mayberry Barney Fife, and he take a drunk and put him in, over night, and the next morning he wake up and you don't know what happened?
>
> Lt. Borawski: So, you don't remember any of this?
>
> Inmate Mackie: I don't remember, the only thing I remember, Lt., is that ... I put down for chow and rec, and when I came back from chow and rec, I remember going up to 25 cell, and telling him that I think Andy was going to smash — after that I woke up in an outside hospital getting staples put in my head, so I'm not in a position to say this is true or false, because I absolutely have no recollection of it. [sic]

*Id.* at pp. 2-3. Accordingly, Plaintiff's testimony was that he was knocked unconscious during the fight with Grey, and did not regain consciousness until he was in the hospital.

The next attachment is an inmate grievance complaint that Plaintiff wrote on March 23, 2010. In the grievance, Plaintiff indicated that he was involved in a fight with another inmate on February 6, 2010, but that he had "absolutely no recollection of the alleged fight." Plaintiff stated that he "w[oke] up in an outside hospital" with staples and sutures in his head and a broken nose. The stated purpose of the grievance was to complain that facility medical staff had failed to properly advise Plaintiff that he had suffered a broken nose. The grievance complaint did not allege that Plaintiff was assaulted by staff. However, it speculated that Plaintiff's injuries were inconsistent with the misbehavior report, and raised the possibility that "some sort of a 'cover up' is in place."

3

Also attached to the Complaint is another grievance complaint, that Plaintiff wrote on April 1, 2010. The stated purpose of the second grievance was to correct the date upon which Plaintiff had been informed by the facility medical staff that he had suffered a broken nose. In addition, Plaintiff again raised the notion that his injuries were inconsistent with the misbehavior report's description of the incident. Plaintiff stated that he "believe[d]" that Sippel and "other officers" must have assaulted him and then covered up the incident, since he did not know inmate Grey, with whom he was alleged to have fought. The grievance offered no factual support for Plaintiff's theory that he was attacked by corrections staff.

Additional documents attached to the Complaint [#1] indicate that Plaintiff's grievances were denied, and that he appealed to DOCCS Central Office Review Committee ("CORC").

Also attached to the Complaint [#1] is a letter dated May 16, 2010, that Plaintiff wrote to DOCCS Commissioner Brian Fischer ("Fischer"), offering an entirely different version of events. Specifically, Plaintiff wrote that on February 6, 2010, he was "savagely beaten" by another inmate, while corrections officers stood by and watched. Plaintiff alleged that the other inmate had caused him serious injuries to his head, including a broken nose, which required numerous stitches and staples. Plaintiff alleged that the corrections officers had given Grey "permission" to attack him, and that they had later issued him a false misbehavior report which indicated that he was the aggressor. Plaintiff did not claim that he was attacked by the corrections officers, though.

On July 6, 2010, Plaintiff wrote out another inmate grievance, setting forth yet another version of the alleged events of February 6, 2010. Specifically, Plaintiff alleged that after he was attacked by Grey, Sippel attacked him with a "night stick," and then "several other officers" rushed toward him, after which he "blanked out." The grievance did not allege that any of the "other officers" did anything to him.

On June 30, 2011, Defendants Hale and Dunbar filed a motion [#4] to dismiss the Complaint. Apparently, Sippel did not join in the motion because he had not yet been served with the Summons and Complaint. The motion maintained that dismissal was required as to Hale and Dunbar, since the Complaint failed to allege any wrongdoing by them. The Court agrees that the Complaint failed to allege any wrongdoing by Hale or Dunbar. The Court further notes that based on the attachments to the Complaint, Plaintiff had no good-faith basis to allege any personal involvement by Sippel.

In response to the motion to dismiss, on July 15, 2011, Plaintiff filed the subject motion [#9] to amend his complaint. The purported reason for the amendment was to "add in particular detail . . . the things which" Dunbar and Hale did to Plaintiff. *Id*. On July 25, 2011, Plaintiff filed a proposed amended complaint [#12]. Significantly, the proposed pleading was not signed or verified. Strangely, the proposed pleading sets forth an entirely new version of the events of February 6, 2010, as follows: Officer Hale opened Plaintiff's cell door "for no apparent reason," after which Plaintiff was attacked by an "unknown inmate." Hale and other officers observed the attack but did nothing to intervene. Hale and another corrections officer known as "Soldier Boy" then grabbed Plaintiff by his legs and "forcibly dragged" him down a flight of stairs, while his head

banged against the steps and pavement. Sippel then ordered Plaintiff to stand against a wall, and then struck Plaintiff on the head with a baton. Plaintiff dropped to his knee and asked Sippel why he had struck him, and Sippel struck him again with the baton, causing a "gaping wound" to Plaintiff's head. Then, between four and six other "unidentified" officers, along with Sippel, "beat, kick[ed] and stomp[ed] Plaintiff with their batons, fist[s] and feet." Propose Amended Complaint [#12] at ¶ 13. Plaintiff then lost consciousness and awoke several hours later in a hospital. Hale then wrote a false misbehavior report, accusing Plaintiff of initiating the fight with Grey, and Dunbar falsely claimed to have investigated the incident.

The Amended Complaint further attempts to explain why Plaintiff failed to exhaust his administrative remedies as to the alleged assault by the named Defendants. Specifically, it states that on February 11, 2010, after Plaintiff filed an inmate grievance about the assault by the officers, Hale confiscated the grievance, then approached Plaintiff's cell and threatened to kill Plaintiff if he filed another such grievance. Plaintiff maintains that, out of fear, he then filed a grievance that only alleged medical negligence, but did not name any officers, except Sippel, because he was afraid of retaliation by Hale, Dunbar, and "other unidentified officers."

Accordingly, in addition to offering an entirely new version of the events of February 6, 2010, the Proposed Amended Complaint alleges that Plaintiff initially filed a grievance alleging an assault by Defendants, but that Hale intercepted the grievance, and then intimidated Plaintiff into not filing another such grievance. Plaintiff claims that he later decided to file an "indirect grievance," in which, despite the alleged threat by Hale, he suggested that he was assaulted by Sippel and other unknown officers.

On August 3, 2011, Sippel, Hale and Dunbar filed the subject cross-motion [#13] to dismiss the amended pleading and/or for summary judgment. In support of the motion, Defendants contend the following: 1) Any official capacity claims for damages must be dismissed; 2) the Amended Complaint fails to allege any actionable wrongdoing by Dunbar; and 3) Plaintiff failed to exhaust his administrative remedies as to Sippel and Hale. With regard to the claim against Dunbar, Defendants maintain that even assuming that Dunbar failed to perform an investigation and failed to photograph Plaintiff's injuries, such actions are not actionable under Section 1983. As for the claims against Sippel, Hale and other unidentified officers, Defendants contend that Plaintiff never filed a grievance alleging that they assaulted him. Furthermore, they argue that although Plaintiff "attempts an end-run around his failure" to exhaust, by alleging that Hale prevented him from filing such a grievance, he offers no "specific allegations of intimidation" by Sippel or the other unnamed officers. Defendants further argue that Plaintiff's explanation for his failure to exhaust is not plausible, since he was transferred out of Attica, and away from Hale, three weeks after he filed the first grievance, and was therefore not in danger of retaliation from Hale.

On September 28, 2011, Plaintiff filed a response [#20] to the motion.[3] In pertinent part, Plaintiff states that he has alleged personal involvement by Dunbar, since Dunbar "had constructive notice or should have had constructive notice of what was going on in A-Block, as it has become an accustomed practice for him and his subordinates to physically assault inmates." Pl. Aff. [#20] at ¶ 3.

---

[3]The response consists of an "affidavit" from Plaintiff, which, unlike the Amended Complaint, is signed and sworn to under penalty of perjury.

DISCUSSION

At the outset, inasmuch as Plaintiff is proceeding *pro se,* this Court is mindful that,

> [w]hen considering motions to dismiss a *pro se* complaint such as this, "courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted). This is especially true when dealing with *pro se* complaints alleging civil rights violations. *See Weinstein v. Albright,* 261 F.3d 127, 132 (2d Cir. 2001). Accordingly, the plaintiffs' allegations in this case must be read so as to "raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted).

*Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 145-146 (2d Cir. 2002).

The legal principles applicable to a 12(b)(6) application to dismiss for failure to state a claim are clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted). When applying this standard, a district court must

accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

The Court is limited as to what evidence it can consider in ruling upon a 12(b)(6) motion:

> In considering a motion under Fed.R.Civ.P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, the district court is normally required to look only to the allegations on the face of the complaint. If, on such a motion, matters outside the pleading are presented to and not excluded by the court, the court should normally treat the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56. In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.
>
> In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered. In addition, even if not attached or incorporated by reference, a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion.

*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citations and internal quotation marks omitted).

### *Claims Against Defendants in Their Official Capacities*

It is clear that a plaintiff cannot assert claims for money damages against state actors sued in their official capacities:

> [I]t is a well-settled rule that the Eleventh Amendment bars federal courts from entertaining a suit against a State agency as well as the State itself. Moreover, where State officials are sued in their official capacities, Eleventh Amendment immunity applies if the state is the real, substantial party in interest. Hence, dismissal under the Eleventh Amendment is appropriate because a suit against a State official in his official capacity is, in effect, a suit against the State

9

itself, which is barred. Therefore, the claims for money damages against [the State officials] in their official capacities must be dismissed.

*Finch v. New York State Office of Children and Family Servs.,* 499 F.Supp.2d 521, 536 (S.D.N.Y. 2007) (footnotes and internal quotation marks omitted). Accordingly, the official-capacity claims are dismissed with prejudice.

### *Claim Against Dunbar*

Plaintiff alleges that Dunbar violated his constitutional rights by failing to investigate the alleged assault by inmate Grey. Plaintiff also alleges, in conclusory fashion, that Dunbar was personally involved in the acts of the other Defendants, since he had "constructive notice" of their actions, because "it has become an accustomed practice for him and his subordinates to physically assault inmates." Such conclusory allegations fail to state a plausible claim against Dunbar. Accordingly, Dunbar is dismissed from this action, with prejudice.

### *Claims Against Sippel and Hale*

Plaintiff alleges that Hale failed to protect him from being attacked by Grey, and that Sippel used excessive force against him following the attack by Grey. Plaintiff also contends that "Soldier Boy" and other unidentified officers assaulted him. Significantly, Plaintiff makes these allegations after previously stating, multiple times, that he had no recollection whatsoever of the events causing his injuries. Moreover, the only basis for these claims is Plaintiff's Amended Complaint, which is neither signed nor verified.

Here, on the face of the Amended Complaint alone, without considering the underlying documents, the factual allegations could state claims against Sippel and Hale. However, the circumstances surrounding this case, as discussed above, including the documentary evidence that the Court can consider on a motion to dismiss, indicate that the bare allegations in the Amended Complaint concerning Sippel and Hale cannot possibly be true. Accordingly, the Court must dismiss the action.

On that point, Rule 11(a) of the Federal Rules of Civil Procedure states, in pertinent part, that every pleading must be signed, and that the Court "must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." Rule 11 further provides that, by signing a pleading, the party is representing to the Court that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FRCP 11(b) (West 2012). In other words, by signing a complaint, a plaintiff is representing to the Court that the factual allegations contained therein are true and have factual support. Here, the Amended Complaint is not signed or

verified, which alone could result in the pleading being stricken. As discussed further below, it also appears that the claims are neither true nor factually supportable.

In that regard, the Court has granted Plaintiff leave to proceed *in forma pauperis*, and accordingly, the Court must review the pleading pursuant to 28 U.S.C. § 1915(e)(2), which states in pertinent part:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that– (A) the allegation of poverty is untrue; or (B) the action or appeal– (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C.A. § 1915(e)(2) (West 2012). In this regard, "[e]ven a well-pleaded complaint may be dismissed as factually frivolous if the sufficiently well-pleaded facts are clearly baseless—that is, if they are fanciful, fantastic, or delusional." *Igarashi v. Skulls & Bones*, 438 Fed.Appx. 58, 2011 WL 4907286 at *1 (2d Cir. Oct. 17, 2011) (citation and internal quotation marks omitted).

Here, the claims against Sippel, Hale and the unidentified officers are clearly baseless, since Plaintiff has stated numerous times that he was unconscious during the entire alleged assault by corrections staff. Plaintiff first gave a detailed explanation of the fact that he was unconscious during the incident on February 9, 2010, at his disciplinary hearing, only three days after the incident. This is significant, since it was before Plaintiff was supposedly threatened by Hale into toning down his grievance complaint. Plaintiff's

subsequent allegations are internally inconsistent and are based on nothing more than his speculation that his head injuries could not have been caused during his fight with Grey. However, the injuries seem consistent with him being knocked unconscious, falling and hitting his head, as reported by corrections staff.

Plaintiff's attempt, in the amended pleading, to explain his failure to exhaust his administrative remedies is also entirely implausible. For example, he states that on February 11, 2010, Hale threatened him about a grievance that he had written three days earlier, in which he claimed that he was assaulted by corrections staff. However, if that were true, it would mean that Plaintiff wrote the grievance *before* he testified at the disciplinary hearing that he had no recollection of the incident. Clearly, that makes no sense.

As required, the Court has considered whether to allow Plaintiff an additional opportunity to amend his pleading. *See, Rahim v. Secretary, Establishment Div., Government of People's Republic of Bangladesh*, 481 Fed.Appx. 18, 19, 2012 WL 4215893 at *1 (2d Cir. Sep. 21, 2012) ("While we have held that district courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend, leave to amend is not necessary when it would be futile."). However, on the facts of this case, the Court finds that any amendment would be futile, and that providing Plaintiff with another opportunity to amend would amount to an invitation to commit perjury.

CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss [#13] is granted as to the official capacity claims and the claims against Dunbar.

Plaintiff's motion to amend [#9] is denied as futile. The action is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated: Rochester, New York
      January 8, 2013

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge